UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,  :
:
v.  : **MEMORANDUM & ORDER**
: 15-CR-0287-12 (WFK)
AIKIAM FLOYD,  :
:
                    Defendant.  :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 12, 2017, Aikiam Floyd pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Aikiam Floyd is hereby sentenced to 121 months of incarceration, 3 years of supervised release, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Aikiam Floyd ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 12, 2017, Defendant pleaded guilty to a lesser-included offense within Count Five of the Superseding Indictment, which charged a Narcotics Trafficking Conspiracy. *See* Plea Agreement ¶ 1, ECF No. 420.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . .

. the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

**II.   Analysis**

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now thirty years old, was born in Montgomery, AL on July 18, 1988. Presentence Investigation Report ("PSR") ¶ 66, ECF No. 481. Defendant is an only child born to the non-marital union of "Price" and Earnestine Floyd. *Id.* Defendant has only met his father on two occasions (at age 12 and age 18) and advised that he only knew him as "Price." *Id.* Defendant's mother was addicted to crack cocaine during Defendant's youth, and as a result, his maternal aunt, Patricia Dixon, raised Defendant in New York since he was an infant. *Id.* ¶ 67. Defendant recalled only vising his mother in Montgomery on two to three occasions during his childhood, and she did not financially provide for him. *Id.* Presently, Defendant advised

Probation he shares an "okay" relationship with his mother. *Id.* He advised that she ceased using street drugs years ago; however, she is now an alcoholic. *Id.*

Defendant reported always sharing a close relationship with Ms. Dixon, who financially provided for him during his childhood. *Id.* ¶ 68. He advised there was no father figure in Ms. Dixon's home during his youth. *Id.* Ms. Dixon is aware of the instant offense, and is supportive of Defendant. *Id.* Defendant reported having five maternal half-siblings, with whom he shares a close relationship. *Id.* ¶ 70. They are all aware of the instant offense and are supportive of him. *Id.* Defendant also advised that Ms. Dixon has four children, all of whom he considers to be his siblings. *Id.* ¶ 71. Ms. Dixon's children were raised alongside Defendant, some of whom assisted in raising him. *Id.* Ms. Dixon's children are all aware of the instant offense, and are supportive of him. *Id.*

Defendant has one daughter with his girlfriend, Carolyn Langhorn. *Id.* ¶ 73. Defendant and Ms. Langhorn share a close relationship. *Id.* As noted in the PSR, approximately several months prior to the instant arrest, Defendant split his time between Ms. Dixon's home and Ms. Langhorn's apartment, which is located in New York, New York. *Id.* ¶ 74. Defendant was arrested for the instant offense at Ms. Langhorn's apartment. *Id.* Defendant has always shared a close relationship with his daughter, and prior to the instant arrest, he financially provided for her. *Id.* ¶ 73. Defendant advised Ms. Langhorn is financially struggling to support their daughter on her own, and Ms. Dixon financially assists Ms. Langhorn at times, and provides childcare help for Defendant's daughter. *Id.*

In approximately 2008, Defendant suffered a herniated disc as a result of a car accident. *Id.* ¶ 78. He advised that he still feels pain from this accident today, although he is not prescribed any medication from the Health Services Unit at the Metropolitan Detention Center in

3

Brooklyn, New York. *Id.* Defendant reported no history of mental or emotional health conditions. *Id.* ¶ 79. Defendant reported an extensive history of substance abuse. *Id.* ¶¶ 80-85. From age 13 up until the instant arrest, he smoked marijuana daily. *Id.* ¶ 80. He spent $200 on the drug weekly. *Id.* From ages 18 to 25, he used ecstasy during the weekends. *Id.* ¶ 81. From ages 25 to 26, Defendant used cocaine during the weekends. *Id.* ¶ 82. Lastly, he experimented with oxycodone, which he ultimately stopped following his March 2014 arrest. *Id.* ¶ 83. With regard to alcohol consumption, Defendant advised that from his 20s up until the instant arrest, he drank gin, Hennessey, vodka and beer "all day long." *Id.* ¶ 84. Given Defendant's history of abusing illicit substances and alcohol, Probation has recommended outpatient drug treatment as part of his supervised release term. *Id.* ¶ 85.

In 2014, Defendant completed a security guard course at an unknown program in Brooklyn. *Id.* ¶ 86. On August 8, 2014, he applied for a security guard registrant license with the New York State Department of State, Licensing Division. *Id.* Currently, he does not possess a license as a security guard from New York State. *Id.* In approximately 2013, Defendant was enrolled at the Technical Career Institute College of Technology in New York, New York, and he majored in applications/technology. *Id.* ¶ 87. In 2007, he earned his high school diploma from Paul Robeson High School for Business and Technology in Brooklyn. *Id.* ¶ 88. From 2014 up until the instant arrest, Defendant was reportedly employed as an unarmed security guard at ABM Security in New York, New York, and he earned $10 hourly. *Id.* ¶ 89. He had verified prior employment from 2007 to 2014 at Cosi (a restaurant), and he reported he was a porter during the baseball season at Citifield in Queens, New York. *Id.* ¶¶ 90-91.

Defendant was previously convicted of criminal possession of a controlled substance (cocaine) in the 7th degree in 2011 and attempted assault in the third degree in 2011. *Id.* ¶¶ 58-59.

Defendant was a member of the Bloods and the Shoota Gang ("SG") and an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶ 10. SG was an offshoot of the OGC which included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey, Bosses In Business and the Bloods. *Id.* ¶ 4. Members and associates of OGC have engaged in drug trafficking, fraud, firearms trafficking and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in their victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6.

Defendant was a street-level narcotics distributor and sold cocaine base to various individuals. *Id.* ¶ 37. As stipulated to in the plea agreement, Defendant is accountable for at least 840 grams of cocaine base. *Id.* In addition, Defendant was involved in additional criminal conduct tied to the instant arrest. *Id.* ¶ 38. On March 21, 2014, New York City Police Department officers executed a search warrant and found Defendant and two others in an apartment with a loaded revolver, ammunition, counterfeit U.S. currency, marijuana, cocaine base and methamphetamine. *Id.* Defendant was arrested and charged with criminal possession of a weapon and criminal possession of a controlled substance, but was ultimately not prosecuted. *Id.*

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's crime both provided dangerous and illegal drugs to his community and helped to fund unlawful gang activity. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to the Bloods, Shoota Gang, and the OGC. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support and his desire to be a present father.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Narcotics Trafficking Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). He faces a maximum term of imprisonment of twenty years. See 21 U.S.C. § 841(b)(1)(C). Defendant also faces: a minimum term of supervised release of three years, 21 U.S.C. § 841(b)(1)(C); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $1,000,000.00, 21 U.S.C. § 841(b)(1)(C);

and a special assessment of $100.00, 18 U.S.C. § 3013. Under the plea agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. *See* Plea Agreement ¶¶ 6-13.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1 applies to violations of 21 U.S.C. § 846 and sets a base offense level of thirty-two. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(4) (Nov. 2016) ("USSG").

As the instant offense involved the possession of firearms, a two-level enhancement is warranted per Guideline § 2D1.1(b)(1), as noted *supra*. *See* Plea Agreement ¶ 2.

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree Defendant should receive a three-point reduction for acceptance of responsibility. This would bring Defendant's total adjusted level to thirty-one.

In Defendant's plea agreement, the Government estimated that the Defendant would receive a two-level reduction "for a global resolution pursuant to U.S.S.G. § 5K2.0 . . . only if the conditions set forth in Paragraph 15 [of the plea agreement] are satisfied." Plea Agreement ¶ 2. Paragraph fifteen, in turn, provided that the reduction would apply only if: 1) eighteen listed defendants entered guilty pleas on or before May 17, 2017; and 2) those pleas were accepted by a

7

United States District Court Judge at the time of the plea allocution or, if the plea was taken by a Magistrate Judge, on or before May 31, 2017. *Id.* ¶ 15. Not all of the listed defendants pled guilty by May 31, 2017, but all defendants have now pled guilty. Paragraph 15 of the plea agreement further states:

> If fewer than all of the covered defendants satisfy conditions 15(a) and 15(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial. The Office may also elect not to recommend a two-level reduction under the Guidelines for a global disposition, as contemplated in Paragraph 2. However, if all of the following covered defendants satisfy conditions 15(a) and 15(b) and the Office does not elect to void the defendant's plea agreement, the Office agrees to recommend a one-level reduction under the Guidelines for a global disposition: Stanley Cherenfant, Steven Cherenfant, Aikiam Floyd, Brandon Greenidge, Jeffrey Joseph, Silbert Nicholson, Zadek Orgias and Stephon Rene. No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

In its Guidelines calculation, Probation does not account for any Global Resolution reduction, and arrives at a total adjusted offense level of 31. PSR ¶ 56. Defendant's criminal history, described *supra*, results in a criminal history score of two, establishing a criminal history category of II. USSG Ch. 5, Part A. With a criminal history category of II and a total offense level of 31, the Guidelines imprisonment range is 121 to 151 months. *Id.* ¶ 98. The Probation Department reported in the PSR that the Government agreed to a one-level reduction per Policy Statement 5K2.0. *Id.* ¶ 111. A one level reduction would result in a total offense level of 30, and with a criminal history category of II, the advisory guideline imprisonment range would be 108 to 135 months. *Id.* Probation recommends 120 months custody and three years supervised release, with special conditions. Probation Sentence Recommendation at 1, ECF No. 481-1.

However, in its sentencing memorandum, the Government advises that it stands by a two-level reduction for a Global Resolution. Gov't Sentencing Mem. at 3, ECF No. 593. The defense also advocates for the two-level Global Resolution reduction contemplated by the plea

8

agreement, which would bring Defendant's adjusted offense level to twenty-nine. Def. Sentencing Mem. at 2, ECF No. 590. With a criminal history category of II, the Guidelines range would be 97 to 121 months. The Government requests a sentence within that range. Gov't Sentencing Mem. at 1. The defense requests a below Guidelines sentence of 48 months. Def. Sentencing Mem. at 12.

The Court finds that a total offense level of 29 and a criminal history category of II applies. Therefore, the Guidelines suggest a term of imprisonment of between 97 and 121 months. USSG Ch. 5, Part A. Per the Guidelines, Defendant may also be sentenced to a term of supervised release of three years, *id.* § 5D1.2(a)(2)[1]; a fine of between $15,000.00 and $1,000,000.00, *id.* §§ 5E1.2(c)(4), (h)(1); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement ... issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing beyond the above discussed Global Resolution reduction.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and

---

[1] The Guidelines suggest a supervised release term of one to three years. *See* USSG § 5D1.2(a)(2). However, the statutory minimum is three years. 21 U.S.C. § 841(b)(1)(C).

9

considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, see 18 U.S.C. § 3663.

## CONCLUSION

A sentence of 121 months of incarceration, to be followed by 3 years of supervised release, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

                                                          s/WFK
                                    HON. WILLIAM F. KUNTZ, II
                                    UNITED STATES DISTRICT JUDGE

Dated: August 14, 2018
       Brooklyn, New York